**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN DOE 1 AND JANE DOE 1, in their individual capacity and as the parents of CHILD DOE 1, and on behalf of themselves and those similarly situated,

Plaintiffs,

v.

CUMBERLAND VALLEY SCHOOL DISTRICT, a Pennsylvania governmental entity' THE CUMBERLAND VALLEY SCHOOL DISTRICT BOARD OF DIRECTORS, a Pennsylvania elected legislative body; HEATHER DUNN; GREGORY RAUSCH; MICHELLE NESTOR; BRIAN DRAPP; JEVON FORD; BARBARA GEISTWHITE; MICHAEL GOSSERT; BUD SHAFFNER; and JESSICA SILCOX, all individual Pennsylvania residents sued in their official capacity as members of THE CUMBERLAND VALLEY SCHOOL DISTRICT BOARD OF DIRECTORS,

Defendants.

Civ. No. 22-

**CLASS ACTION COMPLAINT**

Plaintiffs, parents of and a school-age child attending school in Defendant Cumberland Valley School District ("School District" or "CVSD"), the latter of which suffers from disabilities which renders them medically vulnerable to COVID-19, bring this action for declaratory and injunctive relief on their behalf and a class of similarly situated disabled children ("Plaintiffs") who are at severe risk of illness and injury due to their disabilities and allege as follows.

## INTRODUCTION

1. Despite a clear understanding of the necessity and importance of in-person education and protecting the mental and physical health and lives of children, the School Board of Cumberland Valley School District ("Board") voted to impose a mask optional policy for all School District students, faculty, staff, and any other individuals entering School District buildings on January 3, 2022 so long as school (not community) infection rates are below 2% of overall population, a threshold number 200 times higher than that recommended by the Centers for Disease Control ("CDC").

2. All authorities, as well as Defendants, agree that in-person instruction is necessary for the mental well-being of all children. See Guidance for COVID-19 Prevention in K-12 Schools, Updated Jan. 6, 2022 ("Students benefit from in-person learning, and safely returning to in-person instruction continues to be a priority.").[1]

3. Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[2]

4. Significantly, asymptomatic carriers of COVID-19 transmit the disease. Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine. However, they are estimated to account for more than

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html#:~:text=CDC%20recommends%20universal%20indoor%20masking,layered%20prevention%20strategies%20in%20place.

[2] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

50% of transmissions.[3]

5. "It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19."[4] The CDC explains that a "layered approach" to "reduce the spread of disease" from COVID-19 requires the concurrent use of multiple strategies, of which ***"using masks consistently and correctly"*** is necessary and has "proven effective."[5]

6. As recently as January 4, 2022, the CDC reinforced the need for continued application of a "layered approach" to prevention of the spread of COVID-19, requiring universal masking while indoors, stating: "Mask use and layered prevention strategies, such as receiving all recommended vaccination and booster doses, physical distancing, screening testing, and improved ventilation, are key to preventing COVID-19 and decreasing transmission."[6]

7. In order to keep children in-school, every step necessary to a "layered approach" for preventing the spread of COVID-19, which requires universal masking, should be followed. Id.

8. The current, most prevalent variant of COVID-19, known as the Omicron variant, is extremely infectious and is spread much more readily than either the original SARS-CoV-2 strain or the Delta Variant. See CDC Omicron Variant: What You Need to Know, Updated Dec. 20, 2021("The Omicron variant likely will spread more easily than the original SARS-CoV-2 virus and how easily Omicron spreads compared to Delta remains unknown. CDC expects that anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms.").[7] Unmasked individuals are both at risk of immediate and irreparable harm from COVID-19, as well as can be the cause of a higher risk of spreading COVID-19 and resultant

---

[3] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html

[4] https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces

[5] https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2 .html (emphasis added).

[6] https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine-isolation-background.html

[7] https://www.cdc.gov/ coronavirus/2019-ncov/variants/omicron-variant.html

serious illness and/or death. Id.

9. Like the rest of Pennsylvania, Cumberland County has suffered from the spread of COVID-19. Beginning in August of 2021, and through the date of this filing, Cumberland County has been continuously in the high infection rate. See CDC COVID Data Tracker visited on 2/10/2022.

10. The Board's vote neither accounts for the fact that transmission rate of infection from COVID-19 was still in the "High" category on January 3, 2022 and that it continues to remain high because of Omicron, nor that universal masking is essential to the prevention of the spread of this airborne disease. Id.

11. The Board Vote on that date also changed the threshold to require universal masking in any individual school to 2% community transmission ***in the school***. This is 200 times the threshold recommended by the CDC for community-wide spread (i.e., not just in schools).

12. At present, then, Cumberland County is in the high transmission category, but CVSD schools can be mask optional even though they have transmission numbers 200 times greater than that required to keep the county in the "high" category.

13. According to the Commonwealth's Special Education Data Report for the 2020-21 School Year, there are approximately 1,137 students in the District receiving special education, or 12.1% of the overall enrollment.

14. Of these, 17.4% are categorized as having "other health impairment", 9/2% are categorized as having an emotional disturbance, and 47,7% have a specific learning disability or speech/language impairment, all of which require access to treatment and opportunities that only in-school instruction can provide.

15. The Board's vote fails to account for he fact that many of these children are medically

fragile students who require the protection afforded by universal masking to reduce the risk of spread of COVID-19 to have access to the school buildings for in-person instruction.

16. The Board's vote permitting optional masking forces the parents of medically fragile school children with disabilities to make the shockingly unfair or unjust decision of deciding whether to pull their children out of in-person learning which causes mental harm and havoc on the child and family or face the quantifiably increased risk of physical harm caused by exposure to severe illness or death as a result of COVID-19.

17. Important here, despite Defendants changing the status quo to make masks optional, a dramatic divergence from the status quo set in the summer and fall of 2021, when parents had to make decisions regarding where to educate their children, CVSD did not make their virtual academy education option available for enrollment after the School Board wantonly changed the policy on January 3, 2022.

18. As such, those parents wishing to only send their children to school if universal masking remains in effect are nonetheless trapped by school policy to keep sending their children to in-school education despite the change in status quo regarding masks.

19. Since August 2021 and through the present, due to the high transmission rate of infection from COVID-19 in Cumberland County, the CDC, the Pennsylvania Department of Health, (PADOH), and local agencies all have recommended that school children should universally mask while in school buildings. See CDC COVID Data Tracker, visited on February 10, 2022 ("Everyone in Cumberland County should wear a mask in public, indoor settings.").

20. Further, the American Academy of Pediatrics (AAP), Children's Hospital of Pittsburgh, and Penn State Health all recommend universal masking in schools.[8]

---

[8]https://www.chp.edu/our-services/infectious-diseases/covid-19 at COVID-19 and Schools FAQs (PDF) pg 5 ("14. Who should mask at school? Kids? Staff? With rare exception, everyone over the age of two should be wearing a

21. The Cumberland Valley School Board Policy Manual requires that "Board procedures and policies shall be consistent of law, have a rational and substantial relationship to a legitimate purpose of the Board, and be directed toward the maintenance and support of a thorough and efficient system of public education in this District." *See* Cumberland Valley School Board Policy Manual ("Policy Manual") Section 000, Code 002, Powers, BoardDocs® Pro, visited on 2/10/22.

22. The Cumberland Valley School Board Policy Manual requires the Board to protect the health and safety of the students by minimizing the transmission of communicable diseases. Policy Manual, Section 200, Code 203 - Immunizations and Communicable Diseases, id.

23. Cumberland Valley School Board Policy Manual Section 203 - IMMUNIZATIONS AND COMMUNICABLE DISEASES sets forth, in pertinent part:

> In order to safeguard the school community from the spread of certain communicable diseases, the Board requires that ***guidance and orders from state and local health officials***, established Board policy and administrative regulations and Board-approved health and safety plans be followed by students, parents/guardians and District staff…
>
> The Superintendent or designee shall direct that health guidelines, Board-approved health and safety plans, and universal precautions designed to minimize the transmission of communicable diseases be implemented in District schools…
>
> Instruction regarding prevention of communicable and life-threatening diseases shall be provided by the schools in the educational program for all levels, in accordance with state regulations.

Id. (emphasis added).

24. The School Board Policy Manual, states "The Board recognizes its responsibility to safeguard the health and welfare of District students and employees." See id., Section 800 - Operations Emergency Preparedness 805 - EMERGENCY PREPAREDNESS. The Manual

---

mask to help prevent spread."); Penn State Health issues statement on mask-wearing in schools - Penn State Health News ("masks are most effective when everyone who is medically able is wearing one")

requires that "***the Board shall provide the facilities, equipment, and training necessary to minimize the effects of*** all hazards and emergencies, including but not limited to ... ***communicable diseases, and pandemics***. Id. (emphasis added).

25. Public health concerns are a compelling governmental interest. The Supreme Court has determined that the public health concern of "[s]temming the spread of COVID-19" qualifies as "a compelling interest" of the government. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U. S. __, __, 141 S. Ct. 63, at 67 (2020) (per curiam ("[s]temming the spread of COVID-19 is unquestionably a compelling interest."); *American Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 261 (3d Cir.2003) ('ACLU II'). ("Government's compelling interest in protecting minors.").

26. Prior to the Board vote on January 3, 2022, the Defendant Board recognized the public health significance of COVID-19 and its impact on the District when it approved a Health and Safety Plan designed to help keep the children in school and protect the children's health and well-being while in school during the national pandemic caused by COVID-19.

27. It also recognized the risk when it developed its 2021-2022 Back to School Planning Guide. *See* Back to School Plan, 2021-22 Back to School Plan (for web) (canva.com).

28. Therein, Defendants state:

> ***While the District is in "high" spread of COVID-19, as determined by the PA Department of Health's Early Warning Dashboard, masks will be required in all CVSD buildings (indoors only) for students and staff.*** More information regarding community spread is available on the next page.
> Each Friday, the District will determine the level of spread using the PA Department of Health's Early Warning Dashboard and will communicate masking requirements for the upcoming week. ***If Cumberland County reaches a "high" level of spread (100/100,000), masks will be required until Cumberland County is in "substantial" or "moderate" spread for two consecutive weeks and with a downward trend of cases.*** The change in mask requirement status will be made on Friday for the following week.
>
> If Cumberland County moves to "low" spread, we will immediately move to optional masking for the upcoming week.

> When universally masked indoors, teachers will make plans for mask breaks throughout the day, by which students will remain six feet apart. Please note: Regardless of indoor masking guidelines, universal masking will be required when singing. Masks will be optional at all outside venues, regardless of the District's indoor universal mask guidance. This includes, but is not limited to, recess, physical education, athletics, and activities. If the District is in high spread as defined by the PA DOH, visitors will not be permitted in our buildings during the school day.

Id. (some emphasis added).

29. The current rate of spread in Cumberland County, Pennsylvania remains “high”.

30. As parents decided to send their children back to school, this policy established a status quo Plaintiffs and those similarly situated believed they could rely on for the school year.

31. Unfortunately, after the municipal elections in November 2021, the School Board decided to depart from the status quo, science, reason, student and community safety, and defer to minority fringe groups with farfetched conspiracy theories.

32. This was not the first time the School Board sought to depart from any rational basis for its masking policy. In May 2021, the entire School Board save one member voted to make masks option despite the Governor’s then order requiring masks remaining in place. Thankfully, in that instance, the PADOE required Defendants to implement a policy requiring masks.

33. On January 3, 2022, when Cumberland County was in the “high” spread category, the School Board voted to revise the Health and Safety Plan.

34. The overwhelming majority of speakers at that meeting (, including CVSD school students, asked that universal masking remain in effect.

35. As such, certain members sought to table the vote to make masks optional so it could be further studied. Upon such further study, Defendants would have likely realized they were not only departing from a status quo they established in August 2021, but also that any mask optional

policy would violate federal law.

36. It provided no justification, basis, or medical backing for its decision other than that "all students and staff have the ability to be vaccinated (except those who are unable to receive a vaccination due to medical or religious conflict." *See* Revised Health and Safety Plan, effective January 3, 2022, DisplayFile.aspx (cvschools.org), visited on 2/10/22.

37. Instead, it revised the School District's Health and Safety Plan to state: "CVSD will move to optional, but recommended masking of all students and staff in grades K-12 beginning on January 17, 2022." Id. That date was later moved for most schools.[9]

38. As of today's date, all School District schools either have gone to a mask optional policy or have a date certain on which they will.

39. All School District extracurricular activities are subject to a mask optional policy.

40. During this past week, certain schools have returned their classrooms to a pre-pandemic layout, which student desks in clusters facing each other in a mask optional environment. As such, Plaintiffs and those similarly situated will be breathing on one another without masks for the entire school day.

41. This was not contemplated in the Health and Safety Plan or otherwise stated in any School District policy.

42. In the past 24 hours, Defendants have removed all distancing requirements in School District lunchrooms, thereby removing two layers of the necessary layered approach simultaneously without regard to the commission rate increases each will have.

43. This was not contemplated in the Health and Safety Plan or otherwise stated in any

[9]One CVSD school did go to a mask optional policy on January 18, 2022. Important here, because of the transmission numbers during that single day of masking being optional at the school, Defendants immediately reimplemented universal masking the next day and postponed any further mask optional decision to February 11, 2022.

School District policy.

44. COVID-19 does not distinguish between in-school instruction and extracurricular activities. Despite this, Defendant School Board decided sporting and other extracurricular activities did not warrant the same protection as classrooms: "[b]eginning on January 4, 2022, masks will only be required during regular school hours while inside CVSD buildings."

45. The revised policy further divorced future decisions from community spread rates and linked it to specific transmission rates in particular schools and only then based on family self-reporting. This decision is an abject determination by Defendants that Plaintiffs should be denied access to extracurricular activities, visits to other school buildings after hours. It also ignores the fact that students will leave school and return to the community, which may include infirm family members or others.

46. Hypocritically, the revised Health and Safety Plan changing the status quo provides for a reasonable accommodation based on certain disabilities and religion in acknowledging that certain students cannot be vaccinated.

47. As recently as February 11, 2022, CVSD Superintendent further acknowledged the School District's willingness to implement policies that further violate the January 2, 2022 Health and Safety Plan. By way of example, Defendants attempted to change the threshold number that was in the Health and Safety Plan to a less restrictive count without a formal school board vote on the Health and Safety Plan. Upon being challenged by parents, Defendants admitted they were not following the policy. This demonstrates a pattern and practice of willfully ignoring the status quo.

48. Yet, in the same policy, Defendants make masks optional, thereby discriminating against Plaintiffs and denying them and those similarly situated access to public school buildings.

49. Since stemming the spread of COVID-19 is a compelling governmental interest and

the Board recognizes this fact, then the Board should be doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Cumberland County, as the Board is required to do.

50. According to the Board Policy Manual:

> The Board shall act as the general agent of the residents of Cumberland Valley School District in matters of public education. It shall establish educational goals and academic standards for District schools and govern an educational program designed to meet those goals and standards and to support student achievement. The Board shall be responsible for establishing, maintaining and evaluating the educational programs in District schools, and for enforcing mandatory laws and regulations… Board procedures and policies shall be consistent with law, have a rational and substantial relationship to a legitimate purpose of the Board, and be directed towards the maintenance and support of a thorough and efficient system of public education in this District.

Id. at Sect. 000 – Authority and Powers 002.

51. Reliable information from responsible sources is readily found from the CDC, PADOH, EPA, American Academy of Pediatrics (AAP), UPMC Children's Hospital of Pittsburgh, and Penn State Health, all of which agree that universal masking in schools is essential for preventing the spread of infection to children caused by COVID-19.

52. Instead of following the reliable information from responsible sources and supporting the compelling governmental interest by doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Cumberland County, the Board voted to arbitrarily and capriciously remove the protection provided by universal masking from the District for extracurriculars at various times in January 2022 and for all school activities in February 2022.

53. In fact, Defendants take their capriciousness one step further. Since the January 3, 2022 Board meeting, Defendants have altered the Health and Safety Plan to further relax restrictions beyond the relaxations set forth in the January 3, 2022 revised plan without a Board vote or public

input.

54. In doing so, the School Board has put the parents of medically vulnerable students in the position of having to decide whether to keep their children at home where they will likely suffer continued learning loss or risk placing them in an environment that presents a serious risk to their health and safety.

55. As noted above, though it would amount to segregation, Defendants failed to make virtual schooling available for enrollment on drastically changing the status quo.

56. This brutal choice puts children in a situation that violates Section 504 and the ADA.

57. The ADA and Section 504 prohibit the exclusion of students with disabilities from public educational programs and activities.

58. Plaintiffs are students with disabilities within the meaning of the ADA that carry an increased risk of serious complications or death in the event that they contract COVID-19.

59. Disabling, underlying medical conditions which occur in children have been identified by the Center of Disease Control (CDC) as risk factors for severe COVID-19 infection or death—with or without the vaccination, include a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; (l) genetic disorders; and/or (m) muscular dystrophy or spinal cord

injury. Further, some of the Plaintiffs and the proposed Class are ineligible to receive the vaccine under the Food and Drug Administration regulations.

## JURISDICTION AND VENUE

60. Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein.

61. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3)-(4), and 28 U.S.C. §§2201–2202.

62. This Court has subject matter jurisdiction over the ADA Title II and Section 504 of the Rehabilitation Act claims in this case pursuant to 28 U.S.C. § 1331. Plaintiffs' claims arise under the laws of the United States and the relief sought herein is within the power of the Court to grant. See 29 U.S.C. § 701, et seq. and 20 U.S.C. § 1681, et seq.

63. There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court as masks have been optional, thereby putting Plaintiffs at severely increased risk of health concerns in order to gain access to a public building, i.e., their individual school building or other School District building in which they are asked to participate in scholastic or extracurricular activities.

64. Plaintiffs have no adequate remedy at law.

65. Venue is proper before the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. §1391 because all parties reside or otherwise are found in this District, and all acts and omissions giving rise to Plaintiffs' claims occurred in this District.

66. The Court has personal jurisdiction over Defendants because they are: (a) a public school district head quartered in Cumberland County, Pennsylvania; (b)an elected legislative entity charged with directing the district; and (c) the individuals members of that legislative entity in their official capacity.

## PARTIES

### I. Plaintiffs

67. JOHN DOE 1, and JANE DOE 1, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 1, who is a student in the Cumberland Valley School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

68. The putative class of students Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 of the Rehabilitation Act ("Section 504") and should be shielded from discrimination by their school district.

### II. Defendants

69. Defendant School District is a municipal organization charged with the education of K-12 students in Cumberland Valley, approximately nine thousand, four hundred students (9,400). See Special Education Data Report for 2020-2021 School Year.

70. Defendant School Board is made up of nine individual school directors residing and conducting business in Cumberland County, Pennsylvania.

71. Defendant School Board is an elected school board residing and conducting business in Cumberland County, Pennsylvania.

72. Upon information and belief, Defendant Heather Dunn is Board President, a Cumberland County resident and member of the School Board, sued here in her official capacity.

73. Upon information and belief, Defendant Gregory Rausch is Board Vice-President, a Cumberland County resident and member of the School Board, sued here in his official capacity.

74. Upon information and belief, Defendant Michelle Nestor is a Cumberland County resident and member of the School Board, sued here in her official capacity.

75. Upon information and belief, Defendant Brian Drapp is a Cumberland County resident and member of the School Board, sued here in his official capacity.

76. Upon information and belief, Defendant Jevon Ford is a Cumberland County resident and member of the School Board, sued here in his official capacity.

77. Upon information and belief, Defendant Barbara Geistwhite is a Cumberland County resident and member of the School Board, sued here in her official capacity.

78. Upon information and belief, Defendant Michael Gossert is a Cumberland County resident and member of the School Board, sued here in his official capacity.

79. Upon information and belief, Defendant Jessica Silcox is a Cumberland County resident and member of the School Board, sued here in her official capacity.

80. Upon information and belief, Defendant Bud Shaffner is a Cumberland County resident and member of the School Board, sued here in his official capacity. Upon information and belief, Defendant Shaffner is one of the principal architects of Defendants' ADA violations, having publicly been against the Health and Safety Plan due to the universal masking status quo nearly since the Plan was first enacted.

81. Defendant School District and School Board are "distinct legal entit[ies] with the capacity to be sued for injuries incurred as a result of the execution of its statutory duties and responsibilities." Thus, they are a "public entity" within the meaning of the Americans with Disabilities Act, 28 C.F.R. §35.104 ("ADA"), and receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. §794(a) ("RA").

## FACTS

### I. COVID-19 and its Delta Variant Spread Through the Breath of Others

82. Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein

83. COVID-19 is an extremely infectious and deadly disease that is transmitted from person to person.

84. Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[10]

85. Asymptomatic carriers of COVID-19 can also transmit the disease. Persons who lack symptoms of COVID-19 or do not yet know they have COVID-19 may feel perfectly fine. However, they are estimated to account for more than 50% of transmissions.[11]

86. The current COVID-19 variant, Omicron, is extremely infectious and is spread much more readily than even the Delta Variant and the original SARS-CoV-2 strain.[12]

87. There is no cure for COVID-19. The vaccine has only recently been approved for children under 12 years old. This means that children under 12 years old are only starting to have the ability or opportunity to become fully vaccinated. The vaccine has been proven less effective for those individuals with weakened or compromised immune systems who are unable to produce a robust immune response to the vaccine.

88. School-aged children with certain protected disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions. According to the CDC, "children

---

[10] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[11] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html

[12] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[13] And, as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[14]

89. Upon information and belief, the schools located within the Cumberland Valley School District regularly serve students with these exact disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impact a significant portion of the population.

**A. The necessity of masking for safe access to school.**

90. Prevention of COVID-19 is done through a layered approach, including wearing face masks, washing hands, cleaning surfaces, social distancing, and introducing new air filters are some examples of accommodations and mitigations that may reduce some risk of COVID-19 transmission.[15]

91. For school age children who are not yet fully vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 is most successfully mitigated through universal masking and social distancing. The ABC Science Collaborative, led by top physicians on the staff of Duke University, found that masking was effective in preventing in-school COVID-19 transmission regardless of the physical distance maintained between children as part of social-distancing efforts.[16]

---

[13] Centers for Disease Control, COVID-19: People with Certain Medical Conditions, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[14] Id.

[15] https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor- spaces ("It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of" COVID.

[16] https://abcsciencecollaborative.org/wp-content/uploads/2021/06/ABCs-Final-Report-June-2021.06-esig-DB-KZ-6-29-21.pdf?fbclid=IwAR3XDNVh44k8mrrfd2rcJz8rm-zOdtmlouMDkt-Tt3P3zXicWQeeU5E6wA8

92. "When teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[17] The cloth layer blocks the droplets from releasing into the environment, along with the microorganisms these particles carry. To be more specific, masks block the large droplets ("20-30 microns and up") as well as finer droplets.[18]

93. The CDC,[19] the American Academy of Pediatrics,[20] and the Pennsylvania Department of Health[21] all recommend universal masking in schools in an effort to reduce the risk of transmission of COVID-19.

94. The Pennsylvania Department of Education also supports universal masking to reduce the risk of transmission of COVID-19.[22]

95. Unmasked individuals are at risk of immediate and irreparable harm from COVID-19, as well as at a higher risk of spreading COVID-19, and serious illness and/or death.

96. Accordingly, the entirely reasonable modification being sought in this case is *community masking: protection of selves and others*. Universal masking was successfully implemented in public school districts across Pennsylvania during the 2020 - 2021 school year.

97. Universal masking was successfully implemented by the Cumberland Valley School District through the entirety of the 2020-2021 school year and in the fall of 2021 and no schools were closed due to COVID-19 infection.

98. Upon information and belief, universal masking would not cause any undue hardship

---

[17] Id.

[18] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/maskingscience-sars-cov2.html.

[19] CDC, Guidance for COVID-19 Prevention in K-12 Schools, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html

[20] https://www.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/clinical-guidance/COVID-19-planning-considerations-return-to-in-person-education-in-schools/

[21] August 31, 2021 PADOH Order.

[22] September 10, 2021 Directive of the PDE.

on Defendants and would serve both the interests of Plaintiffs and the public in general by greatly decreasing the risk of COVID-19 infection spreading throughout the Defendant School District.

**B. A Purely Voluntary Opt-out of Masking Pits Children Against Each Other and Creates Serious Risk of Injury and Death.**

99. As schools reopened in the fall of 2021, COVID-19 infection numbers among school aged children continued to rise.[23]

100. In August 2021, Cumberland County's COVID-19 community transmission level was high. At that time, the Center for Disease Control, ("CDC"), the Pennsylvania Department of Health, ("PADOH"), local authorities, ALL recommended that to protect the children and to limit the spread of COVID-19 within the School District and the community, the School District should immediately implement universal masking.

101. In fact, Defendants agreed by implementing a policy that required universal masking when the rate of community transmission was high, thereby establishing a status quo for the 2021-2022 school year.

102. In fact, it put the status quo in its "Back to School Planning Guide," thereby implicitly urging parents to rely on the same in making 2021-2022 schooling decisions.

103. Late in the evening on New Year's Eve 2021, CVSD Superintendent Dr. David Christopher advised parents via e-mail that the Health and Safety Plan would be on the January 3, 2022 Board agenda. That email threatened that masks would be optional, but did not permit any families to make a different decision regarding schooling for the upcoming semester.

104. This all occurred during Cumberland Valley's dramatic increase in cases due to the Omicron variant.

---

[23] August 31, 2021 Order of the PADOH.

105. Upon information and belief, at no time between the Back to School Planning Guide and the January 3, 2022 vote did the School Board seek public input, stakeholder opinion, medical expertise, or any other information rationally relevant to the decision to be made.

106. Because Defendants established a status quo for Plaintiffs and those similarly situated to rely on, which status quo was reliant on community transmission and then changed that status quo, this case is identical to the one presented in *Jane Doe 1, et al. v. North Allegheny School District*, Civ. No. 22-cv-55, which is currently pending in the Third Circuit after the Court granted a temporary restraining order maintaining universal masking for the same reasons and for similarly situated plaintiffs as Plaintiffs here.

107. ***Reducing this case to a single sentence, Defendants are denying access to a public building by a protected class of disabled individuals by implementing a mask optional policy***,

108. CVSD's mask optional policy is the functional equivalent of the School Board voting to remove all handicap access ramps from school buildings. Hopefully, it would not contemplate such an action as it would clearly violate the ADA

109. For certain extracurricular activities, Defendants have already permitted mask optional policies at School District events and buildings.

110. Defendants intend to make masks optional both during and after school at school events (extracurriculars) throughout February 2022 – many are already so designated - regardless of local transmission rates of infection from COVID-19 all reliable medical advice, and the discriminatory result under the ADA and RA.

111. Prior to making this determination, each member of the Board was aware and had full and complete knowledge that the COVID-19 virus primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe, which are then inhaled by

people nearby.

112. Prior to making this determination, each member of the Board was made aware and had knowledge that COVID-19 was rapidly spreading through Cumberland County and was in the high transmission rate.

113. Prior to making this determination, each member of the Board was made aware and had knowledge that over 50% of COVID-19 transmissions occur from individuals who are pre-symptomatic or asymptomatic.

114. Prior to making this determination, each member of the Board was made aware and had knowledge that a layered approach to preventing the spread of COVID-19 is necessary and to be effective wearing masks is required.

115. Prior to making this determination, each member of the Board was made aware and had knowledge that protecting public health is a compelling governmental interest which is more important than individual parent's legitimate rights to raise their children as they see fit.

116. Prior to making this determination, each member of the Board was made aware that individual parent's legitimate rights are limited when confronted by a public health issue.

117. Defendants decision to institute a health and safety plan which permits optional masking pits child-against-child, endangering the lives of children with disabilities. Parents of school children with disabilities are forced to hope other parents will require masking, and not opt-out. But when parents permit their children to opt-out of mask wearing, medically fragile children with disabilities and indeed all children are subjected to serious illness or even death as a result of COVID-19 being spread through unmasked breathing, coughing, and sneezing.

118. In the School District, if optional masking is permitted, the Plaintiffs and those similarly situated will be forced to either attend classes in close proximity to unmasked students,

faculty, and staff, or to not attend school in person.

119. Disabled children being forced to attend school remotely while non-disabled students can attend school in person because the District refuses to impose universal masking as a reasonable accommodation so disabled can attend school in-person is discriminatory in violation of the ADA and RA.

120. The Plaintiffs and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

121. The Plaintiffs and those similarly situated are entitled to safe, fundamental and non-discriminatory access to their school buildings with universal masking of teachers, custodians, parent volunteers, and students.

122. The necessity for such masking is greater now than ever. Yet, the policy of the School District to allow optional masking subjects both healthy children as well as children with certain disabilities to serious illness or even death by exercising their fundamental, non-discriminatory right to access their public institutions.

### C. The School District and the Board of Directors Duties and Responsibilities to Provide a Safe and Healthy Environment for the School Children.

123. Defendant School Board is charged by the State with the management and supervision of the public elementary and secondary schools in the District. It derives its authority to govern the local schools directly from the Constitution of the State of Pennsylvania and the rules and regulations of the Pennsylvania Department of Education. School Board Governance and Operations Legal Status - 24 P.S. 301 et seq.

124. The District is governed by a Board of School Directors consisting of nine (9) directors, each of whom is elected on a regional basis for a term of four years. 24 P.S. 301 et seq.

125. "A school shall make specific and adequate provision for protecting the health and

safety of students and for safeguarding their physical welfare.” 22 Pa. Code, §51.22.

126. A school district must “comply with the requirements of Section 504 and its implementing regulations at 34 CFR Part 104 (relating to nondiscrimination on the basis of handicap in programs and activities receiving or benefitting from federal financial assistance) and implements the statutory and regulatory requirements of Section 504.” 22 Pa. Code, §15.1(a).

127. “Section 504 and its accompanying regulations protect otherwise qualified handicapped students who have physical, mental or health impairments from discrimination because of those impairments.” 22 Pa. Code, § 15.1 (b) Purpose.

128. “The law and its regulations require public educational agencies to ensure that these students have equal opportunity to participate in the school program and extracurricular activities to the maximum extent appropriate to the ability of the protected handicapped student in question.” 22 Pa. Code, § 15.1 (b) Purpose.

129. “School districts are required to provide these students with the aids, services and accommodations that are designed to meet the educational needs of protected handicapped students as adequately as the needs of nonhandicapped students are met. These aids, services and accommodations may include, but are not limited to, special transportation, modified equipment, adjustments in the student’s roster or the administration of needed medication. For purposes of the chapter, students protected by Section 504 are defined and identified as protected handicapped students.” Id.

130. “A school district shall provide each protected handicapped student enrolled in the district, without cost to the student or family, those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of the school program and extracurricular activities without discrimination and to the maximum extent

appropriate to the student's abilities." 22 Pa. Code, § 15.3. General.

**D. Defendants' Actions Constitute a Real and Immediate Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.**

131. Defendants currently refuse to provide reasonable accommodations to Plaintiffs and similarly situated students with disabilities by refusing to implement a Health and Safety Plan designed in accordance with current federal, state, and local guidance.

132. Defendants' Health and Safety Plan now sets forth that mask wearing will be optional while inside the school building and/or on school grounds unless the commission rate in an individual school, which rates are solely based on family self-reporting, reaches a threshold around 200 times the threshold number of cases the CDC requires to put a population in the "high" category of transmission rate.

133. Defendants' refusal to provide reasonable accommodations in the form of an appropriate health and safety plan puts Plaintiffs, and those similarly situated (namely, children with disabilities) at risk of death and debilitating illness from COVID-19.

134. Defendants' refusal to provide reasonable accommodations for students with disabilities excludes Plaintiffs from access to school buildings and from their in-person education.

135. Plaintiffs are students with disabilities, including certain underlying medical conditions, which increase their risk of contracting COVID-19 and/or increase their risk of serious complications or death from a COVID-19 infection.

136. Title II of the ADA and Section 504 of the RA provide broad protections for individuals with disabilities.

137. Both federal disability-rights laws prohibit outright exclusion, denial of equal access, or unnecessary segregation for students with disabilities in public education.

138. Both laws also prohibit methods of administration that defeat the fundamental goals

of public schools, that is, to provide an education.

139. Finally, both federal disability rights laws impose affirmative obligations on covered entities to proactively provide reasonable accommodations to ensure that individuals with disabilities have an equal opportunity to benefit from their public education.

140. School districts with students who have disabilities, including underlying medical conditions, that make them more likely to contract and/or become severely ill from a COVID-19 infection have a legal obligation to ensure that those children can attend school with the knowledge that the school district has followed recommended protocols to ensure their safety.

141. Currently, the CDC's guidance, the PADOH's protocol—as well as those recommended by Cumberland County Health Department, the American Academy of Pediatrics and the American Medical Association— all include universal masking.

**CLASS ALLEGATIONS**

142. Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures on behalf of themselves and a class of similarly situated individuals consisting of all students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 and who attend public school in the School District (the "Class").

143. The Class is defined as follows: all current and future K-12 students attending or wishing to attend public school in the Cumberland Valley School District during the coronavirus pandemic who are unable to obtain a vaccine or for whom the vaccine is of limited efficacy due to their compromised or suppressed immune system, as well as all current and future children who attend school in Cumberland Valley School District who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease,

congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

144. This action has been brought and may properly be maintained as a class action under federal law. It satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

145. Joinder is impracticable because (1) the Class is numerous; (2) the Class includes future members, and (3) the Class members includes many individuals who are incapable due to limited financial means of instituting individual lawsuits.

146. Numerosity: There are well beyond the necessary number of children in the proposed Class to warrant class certification. Based on publicly available data, 18.3% of the Cumberland Valley School District student body – nearly 1,600 students – suffer from disabilities protected by the ADA and RA.

147. Commonality: Common questions of law and fact exist as to all members of the proposed Class, including: (a) whether Defendants' policies and practices discriminate against the members of the Class in violation of the ADA and the Rehabilitation Act; and (b) whether the failure of Defendants to enforce its own order requiring masking in all school located in Defendant School District discriminates against the members of the Class in violation of the ADA and the Rehabilitation Act.

148. Typicality: Plaintiffs' claims are typical of the Class as a whole, including because (a) each Named Plaintiff is currently attending school at a school within Defendant School District and (b) the Named Plaintiffs' and all of the Class members' claims arise from the same wrongful acts, omissions, policies, and practices of Defendants, and are based on the same legal theories.

149. Adequacy: Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. The Named Plaintiffs have no interests adverse to the interests of the proposed Class. The Named Plaintiffs retained counsel with experience and success in the prosecution of civil rights litigation. Counsel for the Named Plaintiffs know of no conflicts among proposed Class members or between counsel and proposed Class members. Plaintiffs' chosen counsel is Alexander W. Saksen of Goldberg, Kamin & Garvin, LLP. Mr. Saksen is a distinguished member of the Pennsylvania Bar, the Federal Bar, the Maine Bar, and the American Bar Associations. His practice focuses on litigation, employment, civil rights, and labor violations committed by public and private actors specifically including municipal, state, and federal governmental entities and frequently include claims arising under the Civil Rights Act, ADA, and RA. In the past 2 years, Mr. Saksen has appeared as counsel in two putative class actions arising out of medical negligence and discriminatory insurance practices.

150. Defendants have acted on grounds generally applicable to all proposed Class members.

151. This action seeks declaratory and injunctive relief. Injunctive or declaratory relief is proper on a class-wide basis, Plaintiffs therefore seek Class certification under Rule 23(b)(2).

152. In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards for the party

opposing the proposed Class.

153. Common questions of fact or law predominate, and class action is superior device for adjudication Rule 23(b)(3).

**COUNT I**
**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA**

154. Plaintiffs, on behalf of themselves and those similarly situated, repeat and re-allege each and every allegation above, as if set forth in full herein.

155. The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §12101(b)(1) & (2).

156. Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

157. The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

158. "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

159. The School District's optional masking policy is denying the District from providing the children of Plaintiff s and those similarly situated with the protections they need to attend school safely. By permitting optional masking, the Board has placed the lives of medically vulnerable children, including Plaintiffs' children, who have disabilities under the ADA in danger. In doing so, Defendants have violated the regulations and provisions of the ADA:

a. Defendants are failing to make a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

b. Defendants are excluding Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

c. Defendants are failing to make their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

d. Defendants are administering a policy that subjects qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

160. The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §§ 35.130 (b)(3)(I) & (iii).

161. Defendants do not have the authority to circumvent the ADA and its protections for students with disabilities through School Board votes on policies.

162. Excluding children from the public school classrooms because of a disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

163. Plaintiffs seek to compel Defendants to impose a mandatory mask mandate with limited medical exceptions only where such exceptions are supported by proper medical documentation as this is the only reasonable means to provide the disabled children with "non-discriminatory access to public institutions" under the ADA.

164. CHILD DOE 1 is an individual with a disability recognized by the ADA.

165. CHILD DOE 1 is otherwise qualified to participate in school.

166. CHILD DOE 1, as a disabled student, will be and has been deprived benefits and services to which all students are entitled, specifically the right to attend and participate in all in-person educational opportunities offered by the school for which they are qualified.

167. JOHN DOE 1, and JANE DOE 1, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 1, who is a student in the Cumberland Valley School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

168. According to the medical team who advises JOHN DOE 1 and JANE DOE 1, regarding the medical care and treatment of CHILD DOE 1, universal masking is essential for safe schooling for CHILD DOE 1 because of serious health-related issues.

169. CHILD DOE 1, who is six years old, is medically vulnerable and requires individualized adult assistance. CHILD DOE 1 is classified as immunocompromised, with Medical conditions including a learning disability and a neurodevelopmental condition that includes low muscle tone, unknown seizures, loss of focus, lost memory, epilepsy, impaired intellectual development, frequent hospitalizations, and extreme and dangerous reactions (including multiple hospitalizations and emergency room visits) to contracting viruses such as COVID-19.

170. CHILD DOE 1's disability categories include intellectual disability, speech and language impairment, and other health impairment.

171. Each of these impact upon CHILD DOE 1's immune system's inability to handle even viruses common for a child of the same age, much less the deadly COVID-19 virus, or her need for in-school education or both.

172. CHILD DOE 1's doctors believe in-person instruction is necessary for CHILD DOE 1 in a Least Restrictive Environment ("LRE") as required by the ADA and RA Section 504.

173. At present, CHILD DOE 1 receives special assistance in all classes except "specials" (such as music and art). CHILD DOE 1 also receives in school speech therapy, occupational therapy, physical therapy, interactive communication assistance equipment that render virtual learning impossible, and other services that are not available with virtual learning.

174. If forced to move to a remote learning environment, CHILD DOE 1 will be deprived of many of the services she needs for her conditions, including therapy and special education and attention that is only available in school.

175. In addition, JOHN DOE 1 is in early remission from blood cancer and suffers from lung damage due to the toxicity of chemotherapy drugs that render him immunocompromised. As such, the risk of CHILD DOE 1 or one of CHILD DOE 1's siblings contracting COVID and bringing it home to their father is severe, both in amount of risk in a mask optional environment and the risk of death or serious illness if either CHILD DOE 1 or JOHN DOE 1 contract the disease.

176. CHILD DOE 1 is directly and most prominently negatively affected by virtual learning. As such, JANE DOE 1, wants, and has a right, to keep CHILD DOE 1 educated via in person learning, which requires a layered approach of protection, including universal masking.

177. JOHN DOE 1 and JANE DOE 1 have legitimate and serious concerns about the District's plan to make masking optional before and after February 11, 2022. This decision is causing stress and anxiety for CHILD DOE 1, as the decision relates to attending school in-person.

178. JOHN, JANE, and CHILD DOE 1 worry about the impact of optional masking on CHILD DOE 1's health and safety, as well as on family and friends. Even with universal masking and vaccinations, CHILD DOE 1's disabilities make it challenging to catch up after having missed

school. Therefore, all preventative measures for a layered approach from the spread of COVID-19, including universal masking are necessary to help keep CHILD DOE 1 in school in order to provide for CHILD DOE 1's education to be delivered in the LRE.

179. CHILD DOE 1, and those similarly situated, suffer from disabilities under the ADA, detailed above, and are thus protected by the ADA and Section 504 from discrimination based on each's disability.

180. The putative class of students Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 and should be shielded from discrimination by their school district.

181. Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from public school classrooms by a failure or refusal to provide a reasonable accommodation (universal masking) for their disability is precisely the type of discrimination and segregation that the ADA and its amendments prohibit.

## COUNT II
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

182. Plaintiffs, on behalf of themselves and those similarly situated, do repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

183. Plaintiffs and those similarly situated are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

184. Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the eligibility requirements for public education in Pennsylvania.

185. Defendants are the recipients of federal financial assistance.

186. The Board is denying the District the ability to provide the Plaintiffs' children, and others similarly situated with the accommodations they need to attend school safely.

187. CHILD DOE 1 is an individual with a disability recognized under the Section 504 of the Rehabilitation Act.

188. CHILD DOE 1 is otherwise qualified to participate in school.

189. A board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties, are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

190. Although a state need not maximize the potential of every handicapped child, it must supply an education providing "significant learning" and "meaningful benefit" to the child.

191. Section 504 of the Rehabilitation Act provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794 (a).

192. Defendants have violated the regulations and provisions of Section 504, as follows:

a. Defendants are excluding Plaintiffs from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

b. Defendants are using administration methods that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. §104.4(b)(4); and

c. Defendants are using methods of administration that have the effect or purpose

of defeating or substantially impairing accomplishment of the objectives of the public education provided by school districts, in violation of 34 C.F.R. § 104.4(b)(4).

193. Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through Board votes.

194. Excluding children from public school classrooms because of a disability is precisely the type of discrimination and segregation that Section 504 prohibits.

195. Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from public school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

## REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

196. Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

197. Plaintiffs seek a temporary restraining order enjoining the School Board from enforcing the vote of January 3, 2022 permitting optional masking.

198. Plaintiffs seek a preliminary injunction enjoining the Defendants during the course of this litigation from enforcing the vote of January 3, 2022 permitting optional masking.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated respectfully request that this Court grant the following relief:

(a) Assume jurisdiction of this action;

(b) Certify this Petition as a class action;

(c) Declare that the School Board’s vote of January 3, 2022 permitting optional masking

violates the rights of Plaintiffs and those similarly situated under the ADA and RA;

(d) Issue a temporary restraining order enjoining Defendants from violating the ADA and RA by permitting optional masking in the School District;

(e) Issue preliminary and permanent injunctive relief enjoining Defendants from violating the ADA and RA by permitting parents optional masking;

(f) Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

(g) Grant such other and further relief as may be just, equitable and proper.

Respectfully submitted,

GOLDBERG, KAMIN, GARVIN, LLP

Date: February 17, 2022

*/s/ Alexander W. Saksen*

Alexander W. Saksen
1806 Frick Building
437 Grant Street, 18th Floor
Pittsburgh, PA 15219
alexanders@gkattorneys.com
*Counsel for Plaintiffs*